**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PAUL RATION, NELLIE RATION, PRISCILLA RATION, and ETHELEEN MOSES, individually and as parent and next friend of TYRELL MOSES and SHANIA MOSES,

        Plaintiffs,

v.                                 No. CIV 03-110 BB/ACT

STALLION TRANSPORTATION INC., SCOTTSDALE INSURANCE COMPANY and LUCJAN ADAMCZYK,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on a motion for partial summary judgment filed by Defendants (Doc. 54). The Court has considered the submissions and arguments of the parties, as well as the applicable law. Having done so, the Court will deny the motion.

This case arises out of a motor vehicle accident in which Plaintiffs' vehicle was struck by a tractor-trailer driven by Defendant Adamczyk ("Driver"). Defendants' motion asks this Court to eliminate Plaintiffs' request for punitive damages from this case. Summary judgment, whether partial or total, is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental*

*Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999).  Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor.  *Id.*  The Court will analyze Defendants' motion under this standard.

In analyzing Plaintiffs' claim for punitive damages, it must be kept in mind that Plaintiffs request the imposition of punitive damages against Driver, against Defendant Stallion Transportation ("Stallion") vicariously, and against Stallion directly.  Viewed in the light most favorable to Plaintiffs, the facts presented to this Court to date are as follows[1]:  (1) the accident occurred around 10:00 p.m., close to mile marker 117 on Interstate 40; (2) when the accident occurred, Driver was traveling in excess of 80 miles per hour in a 75 mile per hour speed zone; (3) at some time prior to the accident, when Driver was still east of Albuquerque, another truck driver (who later came upon the scene of the accident shortly after it happened) observed Driver operating his truck in an erratic manner, speeding up and then slowing down and as a result passing the other driver several times; (4) the other driver's opinion, as a truck driver who had experienced fatigue himself, was that Driver was operating the vehicle as if he had been awake "a little too long"; (5) a witness to the accident saw Driver still operating the truck erratically, almost hitting a guardrail, just before the accident; (6) since the other truck driver observed Driver operating the vehicle in this manner east of Albuquerque, and the accident did not occur until Driver was well west of Albuquerque[2], an inference can be drawn that

---

[1]For purposes of this motion, Defendants do not contest the fact that the accident was Driver's fault, and the Court will not list any facts concerning that issue.

[2]The Court takes judicial notice of the fact that mile marker 117 is 40 to 50 miles from Albuquerque.

Driver continued to operate the vehicle for a significant period of time while still fatigued; (7) after the accident, a regulatory official discovered that Driver had falsified his driver's log to show he was off duty at the time of the accident; (8) Driver could provide no information, at his deposition, regarding how long he had been on the road on the date of the accident; and (9) although Stallion officials were aware of the accident, and were asked by Plaintiffs' counsel to preserve Driver's personnel file and daily log, among other documents, Stallion threw away all such records when it went out of business, in apparent violation of a federal regulation.[3]

Put concisely, and drawing all inferences in favor of Plaintiffs, Plaintiffs' case for punitive damages against Driver and Stallion is as follows:  Driver falsified his log on the date of the accident because he knew he was violating the federal hours-in-service limitation on that date; Driver was fatigued at the time of the accident, and had been fatigued enough, for a long enough period of time, to have driven erratically for over 50 miles; Driver was violating the speed limit, although not excessively; and Stallion's spoliation of evidence should lead to a sanction allowing the jury to infer

---

[3] The Court has not considered other evidence offered by Plaintiffs which appears to be irrelevant to the issues in this case, such as the fact that Driver apparently speaks little or no English.  Absent some indication that this lack of English-speaking ability caused or contributed to causing the accident, it does not appear to be a relevant consideration in this case.  *See, e.g.,* 2003 NMRA 13-1503 (New Mexico uniform jury instruction ("UJI") indicating that violation of a statute or ordinance is of no consequence unless it was a proximate cause of, or contributed to, an injury suffered by the plaintiff); *Smith v. Printup*, 866 P.2d 985, 1005 (Kansas 1993) (evidence that employer knew driver was violating safety regulations, but did nothing to require compliance with those regulations, is admissible only if the safety violations at issue caused or contributed to the accident).  Also, the Court has not considered the expert opinions offered by Plaintiffs' witness Donald Asa, because these opinions:  (1) draw legal conclusions that are the Court's province (*e.g.,* throwing away the records was a violation of a federal regulation); (2) state the obvious (a driver who drives longer hours than federal regulations allow is likely to suffer impairment of ability or alertness); or (3) draw conclusions on subjects as to which expert opinion will not be of assistance (Driver's failure to respond appropriately indicates he was impaired due to fatigue).

that Driver habitually violated the hours-of-service limitations set by federal regulation, and that Stallion knew this.[4]

Defendants maintain these facts are not enough to allow the issue of punitive damages to go forward, either against Driver or Stallion. In support of this assertion Defendants rely mainly on two cases, *Purnick v. C.R. England, Inc.*, 269 F.3d 851 (7th Cir. 2001), and *Burke v. Maassen*, 904 F.2d 178 (3d Cir. 1990). These cases are not persuasive, for different reasons. In *Purnick,* the evidence showed that the truck driver who caused the accident had exceeded the ten-hours-per-day driving limit several times a few days before the accident. However, the driver had not driven for seventeen hours before beginning the trip that ended with the accident. That case, therefore, is unlike this one, where the evidence viewed in the light most favorable to Plaintiffs is that Driver exceeded the federal driving limit on the very day of the accident.

As to *Burke*, it is true that the facts of the case are quite similar to those in this case--the truck driver violated the hours limitation on the day of the accident, fell asleep at the wheel, was speeding, and falsified his driver's log. The only significant difference between *Burke* and this case is with respect to the punitive-damages standard to be applied to the facts. The *Burke* court applied Pennsylvania punitive-damages law which, as is apparent from the result in *Burke*, is much more

---

[4]The Court recognizes that Plaintiffs actually requested even stronger sanctions, including one that would render this motion moot: a jury instruction to the effect that the requisite culpable mental state for the imposition of punitive damages against Stallion has been established (Doc. 68). That request was rejected by the Magistrate Judge, who has proposed lesser sanctions (Doc. 91). The Court is not pre-judging any appeal of the Magistrate's recommended disposition by discussing spoliation sanctions in this opinion. However, given the destruction of the records by Stallion and the impact of that destruction on Plaintiffs' case, it appears likely some form of sanction will be imposed. In the interest of deciding this summary-judgment motion now rather than waiting until a decision can be reached on the Magistrate's recommended disposition, for purposes of this motion the Court will assume a lesser sanction than the one requested by Plaintiffs will be found appropriate.

restrictive than New Mexico law. In Pennsylvania, according to the *Burke* opinion, a jury would not be allowed to infer from circumstantial evidence that the driver knew his actions created a significant risk of danger to others; there would have to be evidence that the driver himself actually knew of the risk and deliberately ignored it. Since there was no evidence in *Burke* that the driver himself, rather than a reasonable person in the driver's position, knew his actions could cause a significant risk of harm, the award of punitive damages was reversed. 904 F.2d at 183. The Court has found no New Mexico case requiring the plaintiff to produce evidence concerning the defendant's actual knowledge that his conduct will create a risk of harm to others. In fact, under the punitive-damages UJI, 2003 NMRA 13-1827, knowledge of the risk is not always a requirement for the imposition of punitive damages--such damages may be awarded if the defendant's conduct is reckless, which is defined as performing an intentional act with utter indifference to (not knowledge of) the consequences. Based on the Court's reading of New Mexico law on punitive damages, it is virtually certain that the *Burke* opinion's restrictive view of punitive damages would not be applied by the New Mexico judiciary.[5]

It is the Court's view that a jury in this case, under New Mexico law, could find that Driver acted recklessly. There is evidence that he violated federal regulations designed to prevent fatigued, unsafe drivers from being on the road. There is also evidence that he was in fact fatigued, and had not become fatigued just a few minutes before the accident; he was driving erratically for many miles prior to the crash, and had ample time to pull off the road to rest. Instead, he chose to continue driving, in an erratic manner, until the accident occurred. Under the applicable UJI, a jury could find

---

[5]As just one example, *see Clay v. Ferrellgas, Inc.*, 881 P.2d 11, 15-17 (N.M. 1994) (affirming award of punitive damages where no employee of corporation had knowledge that unsafe vehicle was being given to customer, but cumulative conduct of employees was reckless).

that Driver acted deliberately, with utter indifference to the consequences of his actions, and therefore acted recklessly.[6]

The question is closer with respect to Stallion's liability for punitive damages. Under UJI 13-1827, if Stallion is not directly liable for punitive damages, it may be vicariously liable. To be directly liable, Stallion itself must have acted recklessly, willfully, maliciously or wantonly. To be vicariously liable for Driver's actions, Stallion must have somehow ratified those actions or participated in them. Since there is no direct evidence that Stallion satisfied the above requirements, the issue of whether punitive damages may be awarded against Stallion depends on what type of sanctions, if any, are awarded against Stallion for the destruction of all records related to Driver's history with the company. For purposes of this opinion, the Court will assume that sanctions similar to those recommended by the Magistrate will be imposed.[7] Those sanctions are as follows: the jury should be allowed to infer that the destroyed records would have been unfavorable to Stallion, that they would have established that Driver was not qualified under federal regulations to drive a tractor-trailer in interstate traffic, and/or that Driver was impaired by fatigue on the day of the accident. The Court understands the "unfavorable to Stallion" inference to include an inference that Stallion knew

---

[6]The Court notes that a substantial amount of case law from other jurisdictions supports the possibility of an award of punitive damages under facts similar to those present in this case. *See, e.g., J.B. Hunt Transport, Inc. v. Bentley*, 427 S.E.2d 499, 505 (Ga. App. 1993) (evidence that driver was fatigued because company required him to drive more than the federal limit, and was driving erratically for ten to twenty miles before the accident, supported punitive damage award); *Osborne Truck Lines, Inc. v. Langston*, 454 So.2d 1317, 1326 (Ala. 1984) (finding of wantonness justified where driver was fatigued due to long hours at wheel, but with knowledge of that fact continued to drive); *Wang v. Marziani*, 885 F.Supp. 74, 79 (S.D.N.Y. 1995) (logging more hours than allowed and falsifying duty log, plus failing to secure cargo, could support award of punitive damages).

[7]Should sanctions ultimately not be imposed, or be substantially less severe than those recommended by the Magistrate, this ruling on punitive damages is subject to reconsideration.

Driver regularly violated the federal driving-limit regulation, but did nothing to correct his behavior. If such an inference is drawn, the Court believes Plaintiffs would be entitled to have the issue of punitive damages against Stallion submitted to the jury under the vicarious-liability standard, because the jury could find Stallion ratified or participated in Driver's reckless conduct. *See Wang* (employer of driver could be liable for punitive damages as it failed to monitor driver's conduct and encouraged him to exceed federal driving limits); *J. B. Hunt* (where employer destroyed driver's logbook, it was reasonable to presume logbook would show employer compelled driver to drive with insufficient rest, and punitive damages could be awarded); *Smith v. Printup, supra,* 866 P.2d at 1006 (employers might be liable for punitive damages if they knew or should have known about fatigued driver's hours-of-service violations and failed to require compliance with those regulations); *Elbar, Inc. v. Claussen*, 774 S.W.2d 45, 48-49 (Tex. App. 1989) (employer could be held liable for punitive damages where employer used method of driving that could result in fatigued drivers); *see also Boomsma v. Star Transport, Inc.*, 202 F.Supp. 869, 881-82 (E.D. Wis. 2002) (under prior common-law standard for punitive damages, evidence that employer permitted or encouraged truck driver to violate federal hours-of-service requirements would be sufficient to support award of such damages, although it was not sufficient under restrictive statute adopted by Wisconsin legislature).

**Conclusion**

At this point, the Court finds the punitive damages against Driver should proceed to trial. While the claim against Stallion is less clear, based on the sanctions presently proposed that claim should also proceed. Defendants' motion for partial summary judgment will therefore be denied.

## ORDER

A Memorandum Opinion having been entered this date, the Court hereby orders as follows:

Defendants' motion for partial summary judgment (Doc. 54) is hereby DENIED.

Dated this 3rd of February, 2004.

_____
BRUCE D. BLACK
United States District Judge

**Attorneys:**
**For Plaintiffs:**
Daniel M. Rosenfelt
Susan H. Widner

**For Defendants**
Nathan H. Mann